UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| HUEY MUSTGROVE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:20-cv-713-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| COUTAR REMAINDER III, LLC, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Motion for Summary Judgment filed by Defendant Coutar Remainder III, LLC ("Coutar"), [R. 28]. Plaintiff Huey Mustgrove, Jr. responded, [R. 30], and Coutar replied, [R. 31]. With the Court's leave, Mustgrove filed a Sur-Reply and Coutar responded. [R. 37; R. 40; R. 41; R. 42]. This matter is now ripe for consideration. For the reasons below, the Court will grant Coutar's Motion.

**I. BACKGROUND**

Around 6:30 a.m. to 7:00 a.m. on the morning of February 23, 2020, Mustgrove walked to the Dairy Mart located at 309 E. St. Catherine Street, Louisville, Kentucky. [R. 1–1, pp. 3–4, ¶¶ 3, 5; R. 28–1, pp. 1–2]. When Mustgrove arrived at the Dairy Mart, it was still dark outside. [R. 28–3, p. 17:19–23]. The store was not yet open for business, so he waited outside the store. [R. 30, p. 1; R. 28–3, pp. 17:1–23, 23:21–25]. Mustgrove then tripped over a "rusty metal plate" that he thought "was a gas station pump or something" on the Dairy Mart premises. [R. 28–3, p. 17:7–10]. The object was to the right of the store where Coutar claims "an old, abandoned car wash is located." [R. 28–1, p. 2; R. 28–3, p. 19, ¶¶ 11–19]. Mustgrove fell, causing his left knee and head to strike the pavement. [R. 1–1, p. 4, ¶ 7; R. 30, p. 1]. Two older men, whom

Mustgrove did not know personally, drove him to the hospital. [R. 28–3, pp. 33:21–34:20]. Hospital records state that Mustgrove fractured his left patella. [R. 28–4, p. 1].

On July 2, 2020, Mustgrove filed a Complaint against Coutar in Jefferson Circuit Court. [R. 1–1, pp. 2–6]. He alleges that Coutar "owned, operated, managed, and/or supervised" the Dairy Mart" and "failed to repair the dangerous condition or adequately warn [Mustgrove] of its presence." *Id.* at 3–4, ¶¶ 3, 10. He seeks compensatory damages, prejudgment interest, court costs, and any other relief to which he may be entitled. *Id.* at 5. On October 22, 2020, Coutar removed the case to this Court on the basis of diversity jurisdiction. [R. 1].

On June 29, 2021, Coutar moved for leave to file a Third-Party Complaint against Bahadar, Inc. ("Bahadar"), the alleged "franchisee and controller of the store and premises[.]" [R. 17]. The Court granted the Motion on July 22, 2021. [R. 18]. Coutar's Third-Party Complaint contains three Counts: (1) common law indemnity and/or contribution, (2) breach of contract and contractual indemnity, and (3) apportionment. [R. 19, pp. 3–5]. Bahadar was served on July 29, 2021, but never answered or appeared. [R. 23–1, p. 3]. On November 1, 2021, Coutar moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a), [R. 23], and the Clerk entered default against Bahadar the following day. [R. 24].

By way of background, the Court will outline the respective property interests according to a Master Lease dated June 22, 2001 (the "Lease" or "Master Lease") and Limited Franchise Agreement dated January 28, 2008 (the "Franchise Agreement"). Under the Lease, Kooshtard Property III, LLC ("Kooshtard"), as fee owner and lessor, leased property, including the Dairy Mart property where Mustgrove was injured, to Bigfoot Food Stores LLC (now known as Mac's Franchise Management LLC) ("Mac's Franchise"),[1] as lessee. [R. 38]. The Lease provides that

---

[1] Mac's Franchise is not a party to this lawsuit.

- 2 -

Coutar holds a remainder interest in the Dairy Mart property. *Id.* at 8. Whether Courtar currently holds a remainder interest or has succeeded to fee ownership (and therefore current lessor under the Lease) is unclear, and in any event, not material for the Court's analysis. Per the Franchise Agreement, Mac's Franchise, as lessee under the Lease and franchisor, grants a license and "tenancy rights" to Bahadar, franchisee, to operate a Dairy Mart on the property located at 309 St. Catherine Street, Louisville, Kentucky. [R. 39, ¶¶ 1-4].

On January 28, 2022, Coutar filed a Motion for Summary Judgment against Mustgrove. [R. 28]. Coutar argues that (1) it cannot be liable for Mustgrove's injuries because, although it owned the land, the tenant/franchisee Bahadar had unrestricted possession and control of the premises; (2) the metal object was not inherently dangerous; and (3) the metal object was open and obvious. [R. 28–1, pp. 5–13]. In his Response, Mustgrove counters that Coutar owed him a duty of care and that there are genuine issues of material fact for trial. [R. 30, pp. 2–7]. Coutar replied, [R. 31]. The Court ordered Coutar to file copies of the Master Lease and Franchise Agreement in the record, and Coutar complied. [R. 32; R. 36; R. 38; R. 39]. Following the Court's order granting leave to file a sur-reply, [R. 37], Mustgrove filed a Sur-Reply on June 8, 2022, [R. 40]. Shortly thereafter, the Court entered an order allowing Coutar to respond to the Sur-Reply, [R. 41], which Coutar filed on June 14, 2022, [R. 42].

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is "material" only if it could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" dispute exists if the evidence would allow a reasonable jury to return a verdict for the non-

movant. *Id.* A court must view the evidence and draw all reasonable inferences in the light most favorable to the non-movant. *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849 (6th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). The function of the court on a motion for summary judgment is not to weigh evidence or determine the truth of the matter, but rather, to decide if there is a genuine issue for trial. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).

The movant bears the initial burden of pointing to deficiencies in the non-movant's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant need not supply evidence negating the opponent's claims; identifying a lack of evidence from the non-movant is enough. *Id.* at 323. If the movant meets this burden, the non-movant must—by deposition, answers to interrogatories, affidavits, and admissions on file—designate specific facts demonstrating a genuine issue for trial. *Id.* at 324; *see also* Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III. ANALYSIS

In a diversity action, like this one, federal courts apply the substantive law of the forum state and federal procedural law. *EQT Prod. Co. v. Phillips*, 767 F. App'x 626, 630 (6th Cir. 2019) (citing *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)). Because the events here occurred in Kentucky, the Court will apply Kentucky substantive law. [R. 1–1, p. 3, ¶ 1]. Mustgrove asserts a common law negligence claim against Coutar. *Id.* at 3–4. Under Kentucky law, "[t]he elements of a negligence claim are (1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages." *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016).

At issue is the first element of Mustgrove's negligence claim—whether Coutar, as lessor or remainder interest holder, owed Dairy Mart customers, like Mustgrove, a duty to warn of or repair the metal object protruding from the pavement. "The existence of a duty is a question of law." *Bramlett v. Ryan*, 635 S.W.3d 831, 835 (Ky. 2021). Under Kentucky law, "[w]hen a tenant maintains complete control and possession over the premises and the landlord has no contractual or statutory obligation to repair, the landlord is only liable for 'the failure to disclose *known latent defects* at the time the tenant leases the premises.'" *Jaimes v. Thompson*, 318 S.W.3d 118, 119 (Ky. Ct. App. 2010) (quoting *Carver v. Howard*, 280 S.W.2d 708, 711 (Ky. Ct. App. 1955)) (emphasis added); *see also Waugh v. Parker,* 584 S.W.3d 748, 752 (Ky. 2019) ("[L]andlords generally do not owe any duty to a tenant except to warn of any latent dangerous conditions that may exist on the property."); *Greer v. Kaminkow*, 401 F. Supp. 3d 762, 771 (E.D. Ky. 2019) (same); *Hunton v. City of Bowling Green*, No. 2005-CA-002164, 2006 Ky. App. Unpub. LEXIS 372, at *5 (Ky. Ct. App. Dec. 15, 2006) (applying the same test to a commercial landlord). Put differently,

> [T]he landlord is under no implied obligation to repair the demised premises in the absence of a contract to that effect, nor is he responsible to a tenant for injuries to persons or property caused by defects therein, where there has been no reservation on the part of the landlord of any portion of the rented premises.

*Malapelli v. Broaddus*, No. 2009-CA-001147-MR, 2011 Ky. App. Unpub. LEXIS 140, at *6 (Ky. Ct. App. Feb. 18, 2011) (quoting *Lambert v. Franklin Real Estate Co.*, 37 S.W.3d 770, 775 (Ky. Ct. App. 2000)). "The duties and liabilities of a landlord to persons on the leased premises by the consent of the tenant are the same as those owed to the tenant himself." *Dutton v. McFarland*, 199 S.W.3d 771, 773 (Ky. Ct. App. 2006) (citation and quotation marks omitted). Accordingly, failure to disclose a known latent defect renders the landlord "liable to the tenant, his family and servants, or even his guests, for injuries sustained therefrom." *Miles v. Shauntee*,

664 S.W.2d 512, 517 (Ky. 1983) (citation omitted); *see also Washington v. WB Holdings, LLC*, No. 2014-CA-000157-MR, 2017 Ky. App. Unpub. LEXIS 483, at *5–6 (Ky. Ct. App. July 7, 2017) ("Kentucky courts have consistently held that invitees of a tenant are owed the same duties as the tenant.").

In contrast, a land *possessor* owes a duty to an invitee "to discover unreasonably dangerous conditions on the land and either eliminate or warn of them." *Shelton v. Ky. Easter Seals Soc., Inc.*, 413 S.W.3d 901, 909 (Ky. 2013). In sum, to determine whether Coutar owed a duty to Mustgrove, the Court must answer two distinct questions: First, did Coutar possess or control the land at issue or was it merely a passive landlord? And second, if Coutar did not possess or control the land, was the metal object protruding from the pavement a known latent defect Coutar was required to disclose? The Court addresses those questions in turn.

### a. Possession or Control of Property

Coutar argues that, as landlord or remainderman, it did not owe a duty to warn of or eliminate the metal object that caused Mustgrove's injuries and, therefore, Mustgrove's claim must fail as a matter of law. [R. 28–1, pp. 5–7; R. 31, pp. 1–3; R. 42]. Specifically, Coutar argues that it cannot be held liable because it was "just a passive, foreign, removed leaseholder" with no control or maintenance responsibilities. [R. 31, p. 2]. According to Coutar, "[i]t leased the premises to non-party Mac's Franchise Management, LLC ("Mac's"), whom in turn, had a Franchise Agreement with Bahadar[,]" which was in control of the premises. [R. 28–1, pp. 3–4]. Although Coutar did not attach the Master Lease or Franchise Agreement to its Motion or filings, it repeatedly offered to make those documents available to Mustgrove and/or the Court. *Id.* at 3–4, *see also* [R. 19, p. 2; R. 31, p. 2]. In any event, the Court ordered Coutar to file the Master

Lease and Franchise Agreement in the record, [R. 32; R. 36], and Coutar complied, [R. 38; R. 39].

The Master Lease and Franchise Agreement confirm that Coutar did not retain possession of the premises or owe maintenance duties. [R. 38; R. 39]. As explained previously, the Master Lease between Kooshtard, as lessor, and Mac's Franchise (f/k/a Bigfoot Food Stores LLC), as lessee, names Coutar as a remainder interest holder in the Dairy Mart property. [R. 38]. The Lease includes the property at 309 E. Saint Catherine St., Louisville, Kentucky, and provides:

> Lessee, at its own expense, will maintain each of the Properties in good repair and condition, except for ordinary wear and tear, and will take all action and will make all structural and non-structural changes and repairs or replacements which are reasonably necessary or required to keep the Properties in good repair and condition. Lessee waives any right to (i) require Lessor to maintain, repair or rebuild all or any part of any of the Properties or (ii) make repairs at the expense of Lessor, pursuant to any Applicable Regulations at any time in effect.

[R. 28–1, p. 3; R. 38, p. 27, ¶ 17]. Further, the Master Lease contains an indemnification provision, which provides that the "Lessee shall indemnify, protect, defend and hold harmless" the Lessor for any losses "caused by, incurred or resulting from Lessee's operations of or relating in any manner to any of the Properties, whether relating to their original design or construction, latent defects, alteration, maintenance, use by Lessee or any person thereon[.]" *Id*. at 28, ¶ 19. The indemnification provision covers losses arising from "any accident, injury to or death of any person or loss of or damage to property occurring in, or about any of the Properties or portion thereof or on the adjoining sidewalks, curbs, parking areas, streets or ways[.]" *Id.* Although the Court need not reach the issue of indemnification, the provision supports that Coutar did not maintain control of or responsibility over the premises. *See Landel v. Kroger Co.*, No. 2013-CA-001637-MR, 2015 WL 226114, at *4 (Ky. Ct. App. Jan. 16, 2015) (citing an indemnification provision, in which the landlord agreed to indemnify the tenant for all claims arising out of use

of a common area, in concluding that the tenant had no responsibility to keep a parking lot and common area in good repair).

The Master Lease also provides that the lessee must obtain the lessors' consent prior to undertaking structural alterations and states that the lessor may inspect the premises upon two days' notice. [R. 38, pp. 24–25, 27–28]. However, these provisions do not demonstrate that Coutar retained possession or control over the premises sufficient to create a duty to Mustgrove. In *Hunton v. City of Bowling Green*, the plaintiff argued that the City, as landlord, retained control of the premises because its lease contained provisions requiring the tenant to obtain lessor approval prior to constructing additions to the premises and to "substitute machinery with machinery of equal or lesser value." 2006 Ky. App. Unpub. LEXIS 372, at *5–8. The Kentucky Court of Appeals agreed with the trial court that, despite these provisions demonstrating some control over the tenant's actions, the City did not maintain the "type of control over [the facility] necessary for any liability to attach to it." *Id.* at *6. To the contrary, the *Hunton* court reasoned that, through these provisions, the City was merely a landlord protecting its investment. *Id.* at *7. Accordingly, the court reasoned that the tenant "was put in complete and unrestricted possession and control of the [premises]." *Id.* at *8. The same is true here. Any control Coutar maintained by contractually retaining a right to inspect the premises and requiring approval of structural alterations served to allow Coutar to protect its investment and does not demonstrate the type of control for land possessor liability to attach. *See id.* at *5–8.

Additionally, the Franchise Agreement between Mac's Franchise and Bahadar states that the franchisee—Bahadar—is responsible for the "cleanliness, sanitary condition and neatness" of the premises. [R. 39, p. 10]. The Master Lease and Franchise Agreement support Coutar's contention that it was a "passive, foreign, removed leaseholder." [R. 31, p. 2].

Mustgrove offers no evidence to the contrary. Instead, he argues that Coutar did not "prove" that it did not possess the premises. [R. 30, p. 2]. But at the summary judgment stage, a defendant, like Coutar, need only point to a lack of evidence supporting an essential element of the plaintiff's claim. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) ("As the party moving for summary judgment, Defendants bear the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Plaintiff's claim."). There is no affirmative requirement that the moving party produce its own evidence negating the claims. *Celotex*, 477 U.S. at 323 ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."). The Master Lease and Franchise Agreement reflect an absence of evidence as to the element of duty. *See* [R. 38; R. 39]. The burden then shifted to Mustgrove to point to "specific facts" demonstrating a genuine issue as to whether Coutar retained possession or control of the property, and therefore owed a duty to warn of or repair the metal object. *See Ford v. Pizza Hut of Southeast Kansas, Inc.*, No. 4:13-cv-00015-JMH, 2013 WL 4500090, at *4 (W.D. Ky. Aug. 20, 2013) ("Plaintiffs, as the parties bearing the burden of proof at trial on this issue, have failed to produce any evidence or fact that would be sufficient to require submission of the issue to the jury.").

Mustgrove's Response and Sur-Reply fail to raise a genuine issue of material fact as to whether Coutar was anything other than a passive landlord. In his Response, he states that "Defendant was identified on the Property Valuation Administration ("PVA") for the address of Dairy Mart, and Third-Party Defendant Bahadar has made no effort to assert a defense to liability." [R. 30, p. 2]. First, Mustgrove fails to explain the PVA identification, and does not attach the identification to the Response. *See id.* He also does not argue that the PVA

identification suggests anything more than mere ownership of the property, which Coutar does not refute. Second, it is unclear why Bahadar's failure to assert a defense or otherwise appear reflects on Coutar's possession or control of the property.

Mustgrove speculates that "[p]resumably, the contractual relationship between Defendant [Coutar] and Third-Party Defendant [Bahadar] requires the Defendant to make modifications to the property or remove objects such as the one that caused injury to Plaintiff." *See id.* The Court notes that Mustgrove failed to conduct *any* discovery, much less examine the Master Lease and Franchise Agreement to establish a duty to warn of or eliminate the metal object that allegedly caused his injuries. [R. 28–1, p. 4 ("Plaintiff made no expert disclosures, never sought any discovery, and fact and expert discovery is now closed.")]; *see also Cargill v. Greater Salem Baptist Church*, 215 S.W.3d 63, 69 (Ky. Ct. App. 2006) (recognizing that a party "cannot complain of the lack of a complete factual record when it can be shown that the respondent has had an adequate opportunity to undertake discovery"). In any event, the Court ordered the Master Lease and Franchise Agreement be filed in the record and gave both parties leave to file supplemental briefing afterwards. [R. 32; R. 37; R. 41]. In his Sur-Reply, Plaintiff concedes that "[t]he Master Lease makes it clear that the Lessor is not required to maintain, repair, or rebuild any part of the property," but argues, for the first time, that Coutar is merely the Remainderman under the Master Lease, not the Lessor. [R. 40, pp. 2–3]. Accordingly, if Coutar is the lessor, Plaintiff admits (and the Court agrees) that it does not owe duties under the Master Lease to repair or maintain the premises. In contrast, as Defendant rightly notes, if Defendant is *not* the lessor, it is even farther removed as a remainder interest holder from any obligation to repair or maintain the premises, [R. 42, p. 2]. In sum, review of the Master Lease and Franchise Agreement demonstrate that Mustgrove's "presumption" about Coutar's contractual obligations

is incorrect. As Mustgrove has not established that Coutar retained control of the property, the proper standard to apply is that of a landlord, not a land possessor. *See Ward v. Wells*, No. 2012-CA-001793, 2014 Ky. App. Unpub. LEXIS 668, at *4–5 (Ky. Ct. App. Aug. 22, 2014) (finding that the landlords only owed a duty to warn of known latent defects because "[t]here was no evidence in this case showing that the [landlords] retained control over the porch or entry to the mobile home[.]").

### b. Known Latent Defects

As stated above, when a tenant retains complete control and possession of the property, a landlord only owes a duty to warn of known latent defects. *See Waugh,* 584 S.W.3d at 752; *see also Harmon v. Fleming Props*., LLC, No. 2008-CA-001685-MR, 2009 Ky. App. Unpub. LEXIS 926, at *3 (Ky. Ct. App. Oct. 30, 2009) (finding a landlord entitled to summary judgment as to injury caused by a non-latent defect because the tenant retained exclusive control and possession of the premises). A latent defect is a condition "unknown to the tenant and not discoverable through reasonable inspection." *Miller v. Cundiff*, 245 S.W.3d 786, 788 (Ky. Ct. App. 2007). In other words, an easily observable condition is not latent. *See id*.; *see also Hunton*, 2006 Ky. App. Unpub. LEXIS 372, at *8–10; *Taylor v. Sander*, No. 2003-CA-002220-MR, 2004 Ky. App. Unpub. LEXIS 1030, at *3 (Ky. Ct. App. Oct. 29, 2004) (citing BLACK'S LAW DICTIONARY 1026 (Revised 4th ed. 1968)) ("The very definition of a latent defect is a defect that a reasonably careful inspection would not reveal or is a hidden defect."). For example, the Kentucky Court of Appeals has found that a "defect" in the varying size of stair steps would be apparent "to anyone who used the staircase and would, therefore, not be considered latent in nature." *Martin v. Moore*, No. 2011-CA-000376-MR, 2012 Ky. App. Unpub. LEXIS 285, at *9 (Ky. Ct. App. Apr. 13, 2012). In contrast, a loose railing unknown to the tenant would be considered a latent defect

because "[i]ts instability could not have been seen; it would have had to be discovered by feeling it, or by the hard way appellant experienced." *Schneder v. Erdman*, 752 S.W.2d 789, 791 (Ky. Ct. App. 1988).

Here, the metal object Mustgrove tripped over was not a known latent defect. First, the law only requires that a landlord disclose *known* latent defects, and Mustgrove has not raised a genuine issue of material fact as to whether Coutar knew of the metal object protruding from the parking lot. Mustgrove argues that Coutar's acknowledgment that the metal object was located "to the right of the store where an old, abandoned car wash is located", [R. 28–1, p. 2], "tends to show that [Coutar] may have had requisite knowledge to require a disclosure at the time Third-Party Defendant gained possession of the property." [R. 30, p. 3]. Coutar counters that "there is no evidence in the record whatsoever that [it] even had any knowledge of any alleged defect[.]" [R. 31, p. 2]. The Court agrees with Coutar—Mustgrove has failed to produce any non-speculative evidence that Coutar knew of the metal object. *See Montgomery v. Maines*, No. 2019-CA-000301-MR, 2020 Ky. App. Unpub. LEXIS 44, at *6–7 (Ky. Ct. App. Jan. 24, 2020) (finding that a plaintiff's "speculation and supposition" that a landlord knew of a defective stair railing was "insufficient to justify submission of a case to the jury."); *see also Martin*, 2012 Ky. App. Unpub. LEXIS 285, at *9–10.

Second, the Court finds that the metal object is not a latent defect. Mustgrove fails even to argue that the metal object is a latent defect. *See* [R. 30]. To the contrary, Mustgrove's arguments that Coutar must have known about the object demonstrate exactly why this object is *not* latent: "The object was fixed to the pavement of the property. It protruded from the surface of the pavement, and could reasonably be determined to pose an unreasonable risk of injury." *Id.* at 3. Based on the images and descriptions provided of the metal object, it is a condition easily

discoverable at the time Coutar leased the premises to Mac's Franchise. *See id.*; *see also* [R. 28 1, p. 2; R. 28–3, p. 78]. Like a "defective" distance between stairs in a staircase, the metal object protruding from the parking lot was readily apparent to Mac's Franchise, as lessee, to Bahadar, the franchisee and operator of the Dairy Mart, and to Mustgrove. *See Martin*, 2012 Ky. App. Unpub. LEXIS 285, at *9. Stated another way, the metal object is distinguishable from a hidden defect like a loose railing that "could not have been seen" and "would have had to be discovered by feeling it, or [ ] the hard way[.]" *See Schneder*, 752 S.W.2d at 791. Here, the object was visible, not hidden, *id.*, and could be discovered "through reasonable inspection." *See Miller*, 245 S.W.3d at 788. Therefore, the metal object is not a latent defect, and Coutar owed no duty to warn of its presence.

The parties' remaining arguments center on whether the object was unreasonably dangerous or open and obvious. [R. 28–1, pp. 7–13; R. 30, pp. 3–7]. Because the Court finds that Coutar did not owe a duty to warn of or repair this defect, it need not analyze these issues, which largely apply to land possessors, as opposed to landlords such as Coutar, with no duty to repair and little control over the premises. Mustgrove has not raised a genuine issue of material fact as to an essential element of his negligence claim—duty of care to warn of or eliminate the metal object that caused his injuries—therefore, Coutar is entitled to judgment as a matter of law. *See Brock v. Bennett*, No. 2013-CA-001267-MR, 2015 Ky. App. Unpub. LEXIS 8, at *11 (Ky. Ct. App. Jan. 9, 2015) (finding summary judgment appropriate because "no evidence of record submitted by [tenant] creates a genuine issue of material fact concerning her claim that the [landlords] were aware of any latent defect in the property which was unknown to [tenant], or could not reasonably have been discovered.").

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion for Summary Judgment, **[R. 28]**, is **GRANTED.**

2. A separate Judgment shall issue contemporaneously with this Order.

This the 27th day of June, 2022.

*[Signature]*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY